```
UNITED STATES DISTRICT COURT                    Docket No.
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
JENNIFER DUNCAN and KAREN KENNING,        :
in her capacity as Trustee of the        :
JENNIFER DUNCAN SUPPLEMENTAL NEEDS        :
TRUST,                                    :
                                          :    COMPLAINT
            Plaintiffs,                   :    AND JURY DEMAND
                                          :
    -against-                             :
                                          :
SULLIVAN COUNTY; INDEPENDENT LIVING,      :
INC.; RANDY J. PARKER; JOSEPH TODORA;     :
WILLIAM MOON; KRISTINE M. CAHILL;         :
VICTORIA SAWALL; COLLEEN CUNNINGHAM;      :
CONSTANTINA HART; RACHEL INNELLA;         :
MICHAEL ALLEN; MARC ISAACS; SAMUEL        :
D. ROBERTS; SAMUEL L. SPITZBERG;          :
HOWARD ZUCKER; JOHN DOE 1-10,             :
AND JANE DOE 1-10,                        :
                                          :
            Defendants.                   :
----------------------------------------------------------------
```

Plaintiffs, JENNIFER DUNCAN and KAREN KENNING, in her capacity as Trustees of the JENNIFER DUNCAN SUPPLEMENTAL NEEDS TRUST, by their attorneys, Norton & Christensen, as and for their complaint against the defendants, allege as follows:

## PRELIMINARY STATEMENT

1.   Plaintiffs Jennifer Duncan and Karen Kenning, in her capacity as Trustee of the JENNIFER DUNCAN SUPPLEMENTAL NEEDS TRUST, bring this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. §1983 for compensatory and punitive damages, declaratory judgment and preliminary and permanent injunctions to require the defendants to provide services to which plaintiff is entitled and to cease and desist from interfering with the provision of those services.

2.   Plaintiff Jennifer Duncan seeks damages for personal injury arising out of the willful deprivation of essential care and the willful destruction and depletion of trust assets needed to secure her safe permanent housing. Plaintiff Jennifer Duncan also alleges that defendants Parker, Todora, Moon, Cahill, Hart and Innella and Independent Living, Inc.,

(a) failed, neglected and/or refused to assure aid continue pending the resolution of fair hearings on Medicaid CDPAS cases, HEAP cases, PSA cases and SNAP cases in violation of 42 U.S.C. 1396a(a)(3); 42 C.F.R. § 431.244(f)(1), 18 N.Y.C.R.R. § 358-6.4(a), and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend XIV, §1, and of the New York State Constitution, N.Y. Const. Art. I, §6;

(b) failed to provide timely and adequate notice of denials, reductions or terminations of Medicaid services in violation of 42 U.S.C. 1396a(a)(3); 42 C.F.R. § 435.912, 435.919, 431.206(b),(c) and 431.210, New York Social Services Law § 22(12); 18 N.Y.C.R.R. § 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend XIV, §1, and of the New York State Constitution, N.Y. Const. Art. I, §6;

(c) failed to provide required "aid-continuing" benefits pending the issuance of fair hearing decisions in violation of 42 U.S.C. 1396a(a)(3); 42 C.F.R. § 431.10, 431.50 and 435.903, and New York Social Services Law § 22, 363-a(1) and 364(2);

(d) failed and refused to provide her with access to her case files at a reasonable time in advance of the date of a fair hearing, in violation of 42 C.F.R. § 431.242(a);

(e) failed and refused to provide accommodations of Plaintiff's disability as required by Americans with Disabilities Act ("ADA"), 42 U.S.C. Chapter 126, §12101, et seq., and applicable federal and state regulations;

(f) failed and refused to observe medically-documented needs and accommodations;

(g) discriminated against Plaintiff on account of her disability;

(h) retaliated against Plaintiff for seeking to enforce her rights under federal and state law;

(i) breached HIPAA privacy rules;

(j) denied agency conferences for the resolution of fair hearing issues;

(k) denied Plaintiff access to her case files;

(l) withheld from Plaintiff adult protective services ordered by stipulation in 2010;

(m) failed, neglected and refused to assist Plaintiff with the completion of and submission of forms and applications;

(n) failed, neglected and refused to coordinate Plaintiff's access to and receipt of social services;

(o) failed, neglected and refused to assist with calls, and with verbal and written communications in the pursuit of medical and life-sustaining services;

(p) failed, neglected and refused to accommodate Plaintiff's disability by participating when necessary in non-verbal communication with Plaintiff, or in providing Plaintiff with access to equipment to facilitate her communication at times when she could not  verbalize her needs, and

(q) failed, neglected and refused to assist Plaintiff in avoiding homelessness or in accessing safe housing despite knowledge that she is, and has been, living in dangerous conditions.

## JURISDICTION AND VENUE

3.   Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1367. Plaintiffs' claim for relief under federal law also arise under 42 U.S.C. § 1983, as Defendants have acted under color of state law.  This Honorable Court has jurisdiction over plaintiffs' state claims which arise from the same nucleus of operative facts as do their federal claims.

4.   Venue is proper in the Southern District of New York pursuant to § 1391(b) in that it is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## PARTIES

5.   Plaintiff Jennifer Duncan is a 50-year old woman who lives by herself in temporary emergency shelter at 10 Hope Street, Hurleyville, Sullivan County New York.

6.    Plaintiff Karen Kenning, appearing here in her capacity as trustee of the Jennifer Duncan Supplemental Needs Trust, resides at 5 Curtain Road, Tully, New York.

7.    The Jennifer Duncan Supplemental Needs Trust was established pursuant to order of Supreme Court of the State of New York, Kings County in April 2009, was funded and is to be funded with Workers Compensation payments due and to become due to Jennifer Duncan and is intended to make possible medically safe, permanent housing for Jennifer Duncan, and expressly is not intended to pay for services which are covered by Medicaid and social service programs.

8.    Defendant INDEPENDENT LIVING, INC., is a New York Not-for-Profit corporation having a principal place of business at 5 Washington Terrace, Newburgh, NY 12550.

9.    Defendant RANDY PARKER is the former Commissioner of Health and Family Services for Sullivan County, New York who served in such capacity during portions of the times relevant to this action.  Defendant RANDY PARKER's current address is unknown to Plaintiffs.

10. Defendant JOSEPH TODORA is the Commissioner of Health and Family Services for Sullivan County, New York and has served in such capacity  at times relevant to this action and continues to serve in such capacity.  Mr. Todora maintains an office at Human Services Complex, Infirmary Road, Liberty, New York 12754.

11.   Defendant WILLIAM MOON is an officer or employee of the Department of Family Services of Sullivan County, with responsibilities related to Plaintiff Jennifer Duncan's case.

12.   Defendant KRISTINE CAHILL is now or formerly was, during times relevant to this action, an Assistant County Attorney with responsibilities related to the activities of the Department of Family Services and, in particular, related to Plaintiff Jennifer Duncan's case.

13.   Defendant CONSTANTINA HART is now, or formerly was, during times relevant to this action, an Assistant County Attorney with responsibilities related to the activities of the Department of Family Services and, in particular, related to Plaintiff Jennifer Duncan's case.

14.   Defendant COLLEEN CUNNINGHAM is now, or formerly was, during times relevant to this action, an Assistant County Attorney with responsibilities related to the activities of the Department of Family Services and, in particular, related to Plaintiff Jennifer Duncan's case.

15.  Defendant VICTORIA SAWALL is an official of the Sullivan County Department of Family Services with responsibilities related to Plaintiff Jennifer Duncan's case.

16.  Defendant RACHEL INNELLA is an official of the Sullivan County Department of Family Services with responsibilities, in particular, related to Plaintiff Jennifer Duncan's case.

17.  Defendant MICHAEL ALLEN was, during times relevant to this action, an official of the New York Office of Temporary and Disability Assistance (OTDA) with responsibilities related to the administration of the Fair Hearing system applicable to Medicaid and other social services.

18.  Defendant MARC ISAACS was, during times relevant to this action, an official of the New York Office of Temporary and Disability Assistance (OTDA) with responsibilities related to the administration of the Fair Hearing system applicable to Medicaid and other social services.

19.  Defendant SAMUEL D. ROBERTS is the Commissioner of the New York Office of Temporary and Disability Assistance (OTDA)with responsibilities related to the administration of the Fair Hearing system applicable to Medicaid and other social services.

20.  Defendant SAMUEL L. SPITZBERG is the Director of the Office of Administrative Hearings in the New York Office of Temporary and Disability Assistance (OTDA), with responsibilities related to the administration of the Fair Hearing system applicable to Medicaid and other social services.

21.  John Doe defendants 1-4 and Jane Doe defendants 1-4 are fictitiously named, intended to represent individual officers, agents, servants or employees of Sullivan County, or the New York State Department of Health or the New York State Office of Temporary and Disability Assistance whose identities are at this time unknown to Plaintiffs, who, by their willful acts and omissions, participated in the decisions and actions that have deprived Jennifer Duncan of her rights under the Constitution and laws of the United States and the State of New York.

## STATUTORY AND REGULATORY SCHEME

A.    Framework of the Medicaid Program

23.  The Medical Assistance Program ("Medicaid") is a joint federal-state program established under Title XIX of the

Social Security Act (the "Medicaid Act") that provides federal funding for state programs that furnish medical assistance and rehabilitation and other services to needy individuals. 42 U.S.C. § 1396 et seq.; 42 C.F.R. § 430 et seq.

24.  States do not have to participate in the Medicaid program, but, if they do, they must conform to federal law and regulations to qualify for federal financial participation. 42 U.S.C. §§ 1396, 1396a, 1396c.

25.  Any state participating in the Medicaid program must adopt an approved State plan, and must administer the program through a "single state agency." 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10(b)(1). New York has elected to participate in the Medicaid program, and its Department of Health ["DOH"] is the "single state agency" responsible for the administration of the Medicaid program in New York. N.Y. Soc. Serv. Law § 363-a(1); 1996 N.Y. Session Laws, c.474, § 242.

26.  DOH is authorized to delegate, and has delegated, certain responsibilities for administering the Medicaid program to local districts. 42 U.S.C. § 1396a(a)(1); N.Y. Soc. Serv. Law § 365(1).

27.  Sullivan County Department of Family Services ("SCDFS") is the local social services provider for the district of Sullivan County, responsible for the day-to-day operations of certain aspects of the Medicaid program, pursuant to a local plan developed and maintained by SCDFS under the guidance of DOH. N.Y. Soc. Serv. Law § 61; 18 NYCRR § 501.1. With respect to the administration of the Medicaid program, SCDFS acts as the agent of DOH.

28.  Notwithstanding any delegation of authority to the local districts, as the "single state agency," DOH remains ultimately responsible to supervise the actions of its agents, including SCDFS, and to ensure that its agents comply with the federal and state statutes and regulations governing the Medicaid program. 42 U.S.C. § 1396a(a)(5); N.Y. Soc. Serv. Law § 22, 363-a(1), 364(2).

29.  Furthermore, DOH may not delegate to SCDFS, or any other agent, authority to exercise administrative discretion in the administration or supervision of the State plan, or issue policies, rules, and regulations on program matters. 42 CFR § 431.10(e)(1).

30.  Among other remedies, DOH has the authority to withhold or deny reimbursement to SCDFS in the event of SCDFS's failure to comply with the Medicaid program's rules and regulations. N.Y. Soc. Serv. Law § 20(3)(e).

    B.    <u>Fair Hearing Process and Requirements</u>.

    31.  Federal law and regulations require a state's Medicaid program to provide Medicaid applicants and recipients with recourse to an administrative fair hearing when Medicaid benefits are denied, reduced or terminated, or proposed to be denied, reduced, or terminated. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.220.

    32.  When determinations are made to deny, reduce, or terminate Medicaid, applicants and/or recipients must be given timely and adequate notice of their right to a fair hearing. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 435.919, 435.912, 431.206(b), 431.206(c), 431.210; N.Y. Soc. Serv. Law § 22(12); 18 N.Y.C.R.R. § 505.14(b)(3)(iv)(f)(2).

    33.  When determinations are made to reduce or terminate Medicaid benefits, recipients who request a fair hearing in a timely manner are entitled to receive their benefits unchanged (called "aid-continuing") until a Decision After Fair Hearing ("DAFH") is issued. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 431.230(a), 431.206(c); 18 N.Y.C.R.R. §§ 358-3.6, 505.23(13)(i)(d); U.S. Const. Amend. XIV, § 1; N.Y. Const. Art. I § 6.

    34.  When aid to continue is ordered, the LDSS is required to do whatever is necessary so that such aid is provide or reinstate any benefits discontinued prior to the order. 18 N.Y.C.R.R. §§ 358-2.5 3.6, 4.2.

    35.  Persons requesting fair hearings are entitled - a reasonable time in advance of the hearing - access to their respective case files and an agency conference with an official with the authority to resolve the matter short of a hearing and a decision after fair hearing. 42 CFR §431.242(a); 18 NYCRRR §§ 358-3.7 and 358-3.8.

    36.  Disabled persons who, like Jennifer Duncan, require additional time to accomplish administrative tasks are entitled to have such additional time as a reasonable accommodation of disability needs whenever necessary to enjoy the benefits of a federally-funded program. 42 U.S.C. §12101, et seq.; 28 CFR §§ 35.130 and 35.149.

    C.    <u>Home Health Services under Medicaid</u>

    37.  Under the Medicaid Act, states must provide home health services, at a minimum, to any individual who, under the

State plan, is entitled to nursing facility services. 42 U.S.C. § 1396a(a)(10)(D).

38.   Through a variety of different programs, home health services are provided to individual Medicaid recipients based on their particular medical needs.

39.   Most "personal care services" are provided under the auspices of 18 NYCRR 505.14, which permits such services to be delivered through a variety of mechanisms including  employees of the local social services department, contractual agreements with a long-term home health care program, contractual agreements with certified home health agencies, or contractual agreements with a proprietary agency or with an individual provider of services.

40.   Under the Medicaid Act, as part of the New York state plan for providing home health services to any individual who is entitled to nursing facility services, local social services departments must offer a Consumer Directed Personal Assistance System, in which the recipient of personal care services chooses the PCA or PCAs who will provide services to him/her, sets the hours of employment, assigns the care tasks to be performed, hires and fires PCAs, trains PCAs for the recipient's particular case and administers the PCA's employment pursuant to a tri-partite agreement among the recipient; the New York State Department of Health or the LDSS, and a fiscal intermediary who must act as the employer of record for the Consumer Directed Personal Care Assistants.  18 NYCRR § 505.28.

41.   Personal care services generally include "hands on" assistance provided to a patient at his/her home, including but not limited to "some or total assistance with personal hygiene, dressing and feeding, nutritional and environmental support functions, and health-related tasks," and other activities that require only minimal medical skill.  18 NYCRR § 505.14(a)(1).

42.   At times relevant to this action, CDPAS service was available to Plaintiff Jennifer Duncan only through designated fiscal intermediaries in contract with the LDSS.  Sullivan County contracts with private vendors to supply CDPAS to eligible individuals.

43.   Each fiscal intermediary providing CDPAS services is required to apply for and be approved as a medicaid service provider pursuant to an application process described at 18 NYCRR § 504.1.  By making such application, each fiscal intermediary agrees, among other things, not to discriminate on the basis of handicap and to comply with all official directives of DOH and SCDFS.  18 NYCRR § 504.1.

44.    DOH and Sullivan County DFS, as DOH's delegate - retains the power and responsibility to ensure and enforce vendors' compliance with the rules, regulations and official directives of DOH and the LDSS.  18 NYCRR § 504.3.

## FACTS PERTAINING TO THE PLAINTIFF

45.    Jennifer Duncan is a Medicaid recipient who was receiving CDPAS until October 10, 2014.

46.    More than eighteen years ago, Jennifer Duncan was injured, and she has been diagnosed with solvent-induced (toxic) encephalomyelopathy, chemical injury, reactive airway disorder (RAD), toxicant-induced loss of tolerance (TILT), traumatic brain injury (TBI) and cognitive deficits, idiopathic environmental intolerance (IEI), and several secondary injuries due to falls (ankle, wrist, neck/head), etc. Her primary and secondary medical conditions constitute, among other things, a physical or mental impairment that substantially limits one or more major life activities.

47.    As a result of her medical condition, Jennifer Duncan requires assistance with almost all her activities of daily living.  Among other limitations, Jennifer Duncan is homebound, requires assistance with accessing food and hydration, with toileting and personal hygiene in general, with dressing, shopping, retrieving mail or receiving deliveries or visitors.

48.    As a result of her medical conditions, Jennifer Duncan cannot safely be exposed to the chemicals found in many common household products, like bleach, ammonia, scented detergents, air fresheners, dry cleaning fluids, or the chemicals found in many personal care products like perfumes, colognes, deodorants, hair gels and sprays, and visitors to her house need, as an accommodation to her disability, to wear clothes that have been laundered in non-toxic or less toxic materials like borax.

49.    As a result of her medical condition, Jennifer Duncan requires that the PCAs assisting her follow prescribed protocols, including the restricted use of personal care products and the special requirements for laundering clothing to be worn around Jennifer Duncan.

50.    The need to control her environment as set forth above requires Jennifer Duncan to receive PCA service only through the CDPAS program, because under no other PCA program available to her under Medicaid can a recipient of services control the dress and personal products of PCAs providing service.

51.    The Offering CDPAS to Jennifer Duncan is a reasonable accommodation of her disability.

52.    Title II of the Americans with Disabilities Act, 42 U.S.C. Chapter 126, § 12101 et seq., requires that State and local governments give people with disabilities an equal opportunity to benefit from all of their programs, services, and activities, including, among others, transportation, recreation, health care, social services, courts, voting, and administrative proceedings.

53.    At all relevant times, Jennifer Duncan was prescribed to receive CDPAS assistance, although the defendants' depriving her of such assistance has prevented her from seeking or receiving medical care and attention and having such prescriptions updated.

54.    Protective services for adults is a social services program administered by the State of New York but funded in whole or in part by the federal government. 42 U.S.C. §1391 et seq.

55.    Through the Department of Family Services of the Division of Health and Family Services, defendant Sullivan County operates and administers social service benefits derived from the federal laws including, among others, protective services for adults; home health care services, and Medicaid.

56.    Plaintiff Jennifer Duncan is a disabled person who relies upon protective services for adults to obtain access to Medicaid and CDPAS services, among other social services, and relies upon CDPAS services for essential support in nearly all her activities of daily living.

57.    Because of her disability, and particularly because of her extreme and life-threatening reaction to chemicals found in many personal care products, dry cleaning substances, laundry detergents, construction materials, fuels, etc., Jennifer Duncan must receive her essential PCA service via a CDPAS program as opposed to any generic PCA service program.

58.    Defendant Independent Living is a New York Not-for-Profit corporation which provides fiscal intermediary services to recipients of CDPAS.

59.    In the summer of 2014 CDPAS was available to Jennifer Duncan in Sullivan County only through fiscal intermediaries like Independent Living. 18 NYCRR § 505.28.

60.    Since, at times relevant to this action, CDPAS was available in Sullivan County only through fiscal intermediaries,

such fiscal intermediaries were state actors for purposes of 28 U.S.C. § 1983.

61. In or about the summer of 2014, Defendants SAWALL or INNELLA or CAHILL or one or more of the other John Doe defendants, determined not to assist Jennifer Duncan in re-certifying her Medicaid coverage, knowing that the failure so to assist her would result in Jennifer Duncan losing, temporarily or permanently, the benefits of the federal program.

62. Upon information and belief, this determination was based in whole or in part upon retaliation for Jennifer Duncan's having attempted to enforce her federally granted and guaranteed rights to fair hearing and due process of law as to prior deprivations of PSA service, HEAP and SNAP and other social services.

63. In furtherance of the plan to deny Jennifer Duncan re-certification, none of the Defendants notified Jennifer Duncan or her designated representative of what needed to be done to re-certify and each failed, neglected or refused to respond to correspondence concerning her re-certification; failed, neglected or refused to accommodate Plaintiff's disability related medical needs and assist her with access to and completing the relevant forms, and failed, neglected or refused to conduct monthly PSA visits intended to, among other things, assist Jennifer Duncan in accessing medical treatment and social services.

63. In or about August or September 2014, without giving proper or adequate notice to Jennifer Duncan, one or more of the Defendants caused Options to be notified that Jennifer Duncan's Medicaid coverage had terminated as of August 1, 2014.

64. Upon learning that her Medicaid had allegedly been terminated, Jennifer Duncan requested a fair hearing as to her Medicaid re-certification and as to the inadequacy of her PSA service and asked that aid continue pending a decision following such a Fair Hearing.

65. In or about August and September 2014, upon information and belief, defendant Independent Living notified PCAs assigned to Jennifer Duncan's case that they should not work for her, that they would not be paid if they did work for her, and that they should seek other employment.

66. On or about October 7, 2014, , although not in a proper, timely or adequate manner, Independent Living notified plaintiff Duncan that it would discontinue providing fiscal intermediary service for her PCAs after October 10, 2014.

67.    Exercising her rights under federal and state
constitution, law and regulations, plaintiff Duncan requested a
Fair Hearing as to her Medicaid re-certification and also as to her
CDPAS service, and also as to the inadequacy of her PSA service and
for aid to continue pending the outcome thereof.

68.    On or about October 8, 2014, OTDA ordered aid to
continue as to PSA service as well as Medicaid reinstatement
retroactive to August 1, 2014, which included plaintiff's CDPAS
service, which had not yet been interrupted.

69.    On or about October 8, 2014, Jennifer Duncan caused
Independent Living to be notified that aid to continue had been
ordered, and promptly requested Options to rescind its notice to
her aides and to advise each person who had been told not to work
for Jennifer Duncan that they could continue to work for her and
that they would indeed be paid if they continued to work for her.

70.    In the days that followed, officials and employees
of New York State OTDA repeatedly advised Sullivan County and
Independent Living that Jennifer Duncan's CDPAS service was to
continue uninterrupted or be reinstated if it had been interrupted.

71.    Nonetheless, Independent Living failed, neglected or
refused to rescind its notice, to advise any aide to continue to
work for Jennifer Duncan and, from and after October 11, 2014,
refused to provide or to process paperwork pertaining to aides
working for or proposing to work for Jennifer Duncan and refused to
issue pay checks to any such aides.

72.    In or about October 2014, Defendant CAHILL falsely
informed OTDA that aides from Independent Living  were attending to
Jennifer Duncan after October 10, 2014.

73.    The County Defendants failed, neglected or refused
to issue an official directive to Independent Living, or, if they
did, OPTIONS failed, neglected or refused to comply with the same.

74.    In connection with her requests for fair hearing
related to the Medicaid recertification and the discontinuance of
CDPAS, Jennifer Duncan requested an agency conference as described
in and required by applicable regulation.

75.    Defendants CAHILL and HART,  in concert with other
individual defendants, refused to afford Jennifer Duncan an agency
conference as promised by applicable regulation.

76.    In or about December 2014, Defendant HART informed
OTDA that Sullivan County DFS had ordered Independent Living to
restore service to Jennifer Duncan.  However, no such directive has

been produced, and, if there were such a directive, there has been nothing done to enforce it and Independent Living continues to ignore it.

77.    The Sullivan County defendants have since agreed to the permanent retroactive re-certification of Jennifer Duncan's Medicaid benefit, but the Sullivan County defendants and Independent Living, jointly and severally, have failed, neglected and refused to reinstate the CDPAS benefits which are essential to Jennifer Duncan's health and well being.   By so behaving, these defendants have worked great harm and injury upon plaintiff and have caused the depletion of her SNT.

78.    The Sullivan County defendants and Independent Living, jointly or severally, have also made it impossible for Jennifer Duncan to achieve relief via the statutory and administrative remedies which would otherwise be available, such remedies having been frustrated and rendered moot by the refusal of the Sullivan County defendants and Independent Living, jointly or severally, to provide aid to continue during the pendency of the proceeding, and by their refusal to provide Jennifer Duncan with access to her case file for purposes of the proceeding, or to provide her with a timely agency conference to resolve the issues short of a fair hearing and determination.

79.    Despite specific directives from the Administrative Law Judge hearing officer presiding over a session convened for the Fair Hearing, the Defendants failed, neglected and refused to provide the restoration of CDPAS service pending the decision in the Fair Hearing, as is mandatory under the regulation, thereby depriving Jennifer Duncan of critical medical care and due process of law.

80.    Despite specific directives from the ALJ hearing officer to provide Jennifer Duncan with access to her complete PSA case file, as is mandatory under federal (42 CFR §431.242(a)) and state (18 NYCRRR §358-3.7) regulation, defendant Constantina Hart defiantly stated that such access would not be provided, thereby depriving Jennifer Duncan of due process of law.  Upon information and belief, others  individual defendants were also involved in the decision to deprive Jennifer Duncan of such access.

81.    Instead of affording  Jennifer Duncan her rights under law and regulation and pursuant to the specific directives of the ALJ hearing officer, Defendants conspired to initiate guardianship proceedings, seeking to have themselves appointed as guardians of Jennifer Duncan's person and property so as to, among other things, prevent her from enforcing her rights against them.

82.    Jennifer Duncan has been surviving during this deprivation only because her SNT, which is not meant for such purposes, was able for a time to pay qualified aides who should be in the pay of Sullivan County via a fiscal intermediary.  However, the funds of her SNT have now been exhausted, leaving Jennifer Duncan at risk of even more serious injury and death, all because defendants refuse to accommodate her disability and to provide the ATC which has been ordered.

83.    Despite repeated requests, PSA has failed, neglected or refused, among other things, to:

(a)    Require Independent Living to comply with the ATC directive;

(b)    Assist Jennifer Duncan in accessing alternative PCA services;

(c)    Assist Jennifer Duncan in accessing medical care;

(d)    Assist Jennifer Duncan in accessing medically safe and affordable housing;

(e)    Accommodate her disability by preparing to follow the visitor protocol so that a PSA case worker can interact with her;

(f)    Assist her in recovering SNAP and HEAP benefits which have been withheld, rendering her incapable of acquiring sufficient food and maintaining electric service to her place of shelter;

(g)    Assist her in communicating with her landlord as to necessary repairs to her place of shelter;

(h)    Provide her with access to her PSA file;

(i)    Assist her in making her place of shelter handicap accessible;

(j)    Accommodate her medically necessary disability needs by assisting with forms, paperwork, verbal and telephone communications; and

(k)    Act effectively and properly as the central point of contact for all Plaintiff's DFS services

84.    On account of PSA's neglect and refusal to provide service to Jennifer Duncan, she has been denied HEAP allowances and consequently suffered inadequate heating for winter for several years.

85.    On account of PSA's neglect and refusal to provide service to Jennifer Duncan, she did not receive her proper SNAP (food stamps) allowance for two years, having been deprived of approximately eight months of benefits which are still owed to her and still not rectified.

86.    The individual defendants associated with PSA have taken the position that they are not required to

accommodate Jennifer Duncan's disability because it is an "unusual" disability.

87.    When assigned to be Ms. Duncan's PSA case worker, defendant Innella refused to prepare clothing so that she could visit Ms. Duncan, visits no less frequently than monthly being a minimal part of PSA service, unless she could be paid for the time she would expend in laundering her clothes, and Defendant Moon, her superior, told her she would not be paid for that time.

88.    For this petty refusal to accommodate Ms. Duncan's disability, Ms. Duncan has had no PSA service visits and essentially no assistance during the current prolonged crisis, while she has been undergoing personal deprivation and injury, untreated infections, and has been and is at risk of permanent injury and death.

89.    The individual defendants INNELLA and HART have both deprived Ms. Duncan of the benefits of these federally-funded programs, by, among other things, seeking to have a guardian appointed to deprive her of control of her legal rights.

90.    Defendants, separately and together, have routinely failed to take one or more - and sometimes any - of the steps required by law and regulation when reducing or terminating Medicaid services or threatening the reduction or termination of same, and in the administration of fair hearings challenging such determinations.

91.    Defendants Todora and Innella have routinely failed to provide timely and adequate notice of denials, reductions or terminations of home health services. Sullivan County and the State Defendants have routinely failed to supervise Defendants Todora and Innella to ensure that they provide timely and adequate notice of denials, reductions or terminations of home health services.

92.    Defendants Todora and Innella have repeatedly failed to accommodate plaintiff's medically necessary disability needs in accordance with physicians' documentation, orders and prescriptions; routinely refused to assist Plaintiff with telephone communication and note-taking, and ignored prescriptions by introducing, or attempting to introduce, into Plaintiff's shelter items and materials that are harmful to Plaintiff.

93.    Defendants have repeatedly and routinely allowed fiscal intermediaries illegally to terminate or deny

home health services to eligible individuals.

94. Defendants have refused repeatedly to comply with aid continuing directives issued by State Defendants.

95. When a fiscal intermediary unlawfully terminates a recipient's service, State Defendants have a custom and practice of issuing aid to continue orders and decisions after fair hearings which run against County Defendants and not explicitly against the fiscal intermediary, or which are intentionally vague and ambiguous. This vitiates the directives because County Defendants take the position they do not control the fiscal intermediaries.

96. The County defendants have failed, neglected and refused to follow the regulations pertaining to Aid to Continue.

97. Defendant ALLEN had, and Defendant ISAACS has, a custom and practice of failing to insure that aid continuing directives are complied with.

98. Defendant MICHAEL ALLEN, with responsibilities to enforce the aid-to-continue directive, stated repeatedly that Jennifer Duncan is entitled to be receiving PCA service on an aid to continue basis, but did nothing to enforce that right.

99. Defendant MICHAEL ALLEN, while he had responsibilities to enforce the aid-to-continue directive, stated that because of the relationship between OPTIONS and Sullivan County, and because a fiscal intermediary was required for Jennifer Duncan to receive CDPAS service, that OPTIONS is subject to all rules, regulations and directives, including aid to continue, and that it is a state actor which may be compelled to provide such service, but he did nothing to enforce that conclusion, and his successor MARC ISAACS has done nothing to enforce that conclusion.

100. Defendants ROBERTS, SPITZBERG, and ZUCKER were superiors of Defendant ALLEN, and are superiors of Defendant ISAACS, charged with supervising the work of each of them and with complying with applicable federal and state regulation, but none of them has taken any step to bring OTDA or the NYS Department of Health or Options into conformity with law and regulation.

101. Upon information and belief, ALLEN, ROBERTS, SPITZBERG and ZUCKER have ignored the mandates of federal and state regulation applicable to the provision of fiduciary

intermediary services on an aid to continue basis, all with severe and life-threatening consequences to Jennifer Duncan.

102. The failure, neglect and refusal of Options to service her case and the failure of the County defendants to require Options to re-establish Jennifer Duncan's case or otherwise to restore CDPAS service for Jennifer Duncan have deprived Jennifer Duncan of her federally mandated services and of the due process of law and have caused her grievous bodily harm, including, among other things, the deprivation of nutrition and hydration; the deprivation of access to hygiene, sanitation; loss of speech, muscular movement and control; atrophying muscles; loss of proper digestive and bowel function; pain; loss of ability to focus; worsening cognitive effects and impairments; the development of infections and sores; living constantly in the vicinity of her own urine and feces; an inability to access medical treatment; the inability to maintain heat and warmth in the winter for several years and the inability even to have windows opened for ventilation on hot days in the summer.

103. The failure, neglect and refusal of Options to service her case and the failure of the County defendants to require Options to reestablish Jennifer Duncan's case or otherwise to restore CDPAS service for Jennifer Duncan have also resulted in her being confined to a cot infested with ants, flies, wasps and other insects, ticks, spiders and other pests, and she has suffered internal parasites and infections.

104. The failure, neglect and refusal of Options to service her case and the failure of the County defendants to require Options to reestablish Jennifer Duncan's case or otherwise to restore CDPAS service for Jennifer Duncan have resulted in her being deprived of medications for years which has led to greater and more frequent infections, diminution of her neurological function, and the loss of effective nutritional absorption.

105. The failure, neglect and refusal of Options to service her case and the failure of the County defendants to require Options to re-establish Jennifer Duncan's case or otherwise to restore CDPAS service for Jennifer Duncan have resulted in her going through prolonged periods of infrequent, inadequate care which means lack of food, water, hygiene, mobility, being bedbound without services, without assistance with the activities of daily living, on account of the lack of reliable fiscal services and funding.

106. Until Jennifer Duncan receives the reinstatement of the CDPAS service she needs to survive, she

is at high risk of developing disease and infection, will not have access to nutrition and liquids, will not have access to medical care, and will lack the strength and ability to function as a human being and will be in constant risk of grievous injury and death.

107.    In addition to the direct personal injury already incurred, for many months and years now, Jennifer Duncan has been unable even to receive mail or deliveries.

108.    Jennifer Duncan has attempted repeatedly to seek the restoration of essential services and her receipt of benefits and services through the fair hearing processes required under federal and state law and regulation, but her efforts have been and continue to be largely frustrated by the failure, neglect and refusal of the state and county defendants to accommodate her disability so as to allow her equal participation in the fair hearing process, their refusal to afford her agency conferences, their withholding from her access to her case files, and their withholding of PCA assistance which is a prerequisite to her preparation for and participation in such process.

109.    Upon information and belief, the misconduct of the Defendants has been and is being engaged in pursuant to established practices, policies and usage of county officials, acting under color of state law but acting contrary to the rights of Jennifer Duncan as guaranteed by the constitution and laws of the United States and the State of New York.

110. Because of the extended and ongoing deprivation of services essential to her, Jennifer Duncan has been, and is, unable to participate fully or even reasonably or adequately in this or other litigation or administrative proceedings, will continue to be unable until aid has been restored, and she begs leave to supplement or amend her pleadings at such time as her services have been restored and she has had a reasonable time thereafter to recover her strength and functionality.

111.    This action is brought for monetary damages, for declaratory relief and for preliminary and permanent injunctions.

112.    Jennifer Duncan seeks the immediate and permanent restoration of essential services and damages for the pain and suffering she has endured on account of the deprivation of services and constitutional rights. This action also seeks compensation for the deprivation of rights promised by the Constitution and laws of the United States of

which the plaintiffs have been deprived by the individual defendants acting under color of state law.

### AS AND FOR A FIRST CLAIM
### AGAINST THE INDIVIDUAL DEFENDANTS AND INDEPENDENT LIVING

113.    Defendants' custom and practice of failing to insure ATC pending decisions after fair hearing challenging the denial, discontinuance or reduction of Medicaid benefits such as CDPAS violates Plaintiff's rights under 42 USC § 1396a(a)(3),    42    C.F.R.    §    431.230(a);    431.231(c) 431.244(f)(1)(ii), 28 NYCRR 358-6.4 and the due process clauses and the New York State constitution.

### AS AND FOR A SECOND CLAIM
### AGAINST INNELLA,PARKER, MOON, CAHILL, AND INDEPENDENT LIVING

114.    Defendants' custom and practice of failing to provide adequate notice violates Plaintiff's rights under 42 U.S.C.    1396a(a)(3);    42    C.F.R.    §    435.912,    435.919, 431.206(b),(c) and 431.210, New York Social Services Law § 22(12); 18 N.Y.C.R.R. § 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend XIV, §1, and of the New York State Constitution, N.Y. Const. Art. I, §6.

### AS AND FOR A THIRD CLAIM
### AGAINST INNELLA, PARKER, TODORA, MOON, HART, AND INDEPENDENT LIVING

115.    Defendants' failure to maintain Plaintiff's case file in accordance with regulations and Defendants' refusal to permit Plaintiff access to her case file violates Plaintiff's rights under 42 U.S.C. 1396a(a)(3); 42 C.F.R. § 431.242(a), New York Social Services Law § 22(12); 18 N.Y.C.R.R.    §§ 358-5.1 and 358-3.7, and the Due Process clauses    of    the    14th    Amendment    to    the    United    States Constitution, U.S. Const. Amend XIV, §1, and the New York State Constitution, N.Y. Const. Art. I, §6.

### AS AND FOR A FOURTH CLAIM
### AGAINST ZUCKER, SPITZBERG, ROBERTS, ALLEN AND ISAACS

116.    State Defendants' custom and practice of failing to properly oversee and supervise County Defendants' and Independent Living's customs and practices concerning the provision of notice, aid-continuing, provision of access to

case files violates Plaintiff's rights under 42 U.S.C. 1396a(a)(3); 42 C.F.R. § 435.912, 435.919, 431.10, 431.206(b),(c) and 431.210, New York Social Services Law § 22(12); 18 N.Y.C.R.R. § 505.14(b)(3)(iv)(f)(2) and 358-3.3, and the Due Process clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend XIV, §1, and of the New York State Constitution, N.Y. Const. Art. I, §6.

## AS AND FOR A FIFTH CLAIM AGAINST ALL DEFENDANTS

117. Plaintiff Jennifer Duncan has suffered personal injury; pain and suffering; malnutrition, hunger and thirst; the deprivation of liberty and dignity; the deprivation of access to medical care, treatment and attention; the denial of the opportunity to participate in and complete legal proceedings involving substantial financial consequences, and the denial of the opportunity to secure safe and healthy housing and financial support to which she would be otherwise entitled.

118. Plaintiffs demand trial by jury as to any and all issues of fact that may be presented to the Court.

WHEREFORE, JENNIFER DUNCAN and KAREN KENNING, as Trustee of the JENNIFER DUNCAN SUPPLEMENTAL NEEDS TRUST, respectfully demand judgment:

- in favor of Ms. Duncan against all defendants for damages for her personal injury, pain and suffering;

- in favor of Ms. Duncan and Ms. Kenning against all defendants for damages for the restoration of the principal of Ms. Duncan's supplemental needs trust;

- in favor of Ms. Duncan declaring that Options, as a state actor, is responsible to comply with all federal and state regulations and directives pertaining to Medicaid;

- preliminary and permanent injunctions requiring Options to resume fiscal intermediary services for Ms. Duncan; to comply immediately with requests to place her PCAs on the Options payroll; to notify all former PCAs that they are free to return to work for Jennifer Duncan, as employees of Options, and to provide such services continuously until further order of the Court and/or until other proper and adequate provision is made for the provision of home health care to Ms. Duncan;

- preliminary and permanent injunctions that her CDPAS service not be interrupted again without further order of this Court;

- preliminary and permanent injunctions that her PSA service be resumed per the administrative consent order of June 2, 2010, and in full accordance with the prescribed accommodation of her disability;

- declaring that the defendants jointly and severally are responsible for conformity with all applicable regulations including but not limited to those pertaining to aid to continue, access to client files, and providing agency conferences;

- against Options for punitive damages;

- for the costs and attorney fees of this action,

- and for such other and further relief as to the Court seems just.


DATED:       Goshen, New York
             October 10, 2018

                         Yours, etc.

                         NORTON & CHRISTENSEN


                         By: /S/ Henry N. Christensen, Jr.
                            Henry N. Christensen, Jr. (HC4062)
                         Attorney for Plaintiffs
                         60 Erie Street,P.O. Box 308
                         Goshen, New York 10924
                         (845) 294-7949