UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JENNIFER DUNCAN and KAREN          :
KENNING, in her capacity as Trustee of the  :
JENNIFER DUNCAN SUPPLEMENTAL    :
NEEDS TRUST,                       :
               Plaintiffs,         :
                                 :
v.                                 :
                               :      **OPINION AND ORDER**
SULLIVAN COUNTY; INDEPENDENT    :
LIVING, INC.; JOSEPH TODORA; WILLIAM :    18 CV 9269 (VB)
MOON; VICTORIA SAWALL; COLLEEN   :
CUNNINGHAM; CONSTANTINA HART;   :
RACHEL INNELLA; MICHAEL ALLEN;    :
MARC ISAACS; SAMUEL L. SPITZBERG;  :
HOWARD ZUCKER; JOHN DOE 1–10; and  :
JANE DOE 1–10,                 :
               Defendants.    :
---------------------------------------------------------------x

Briccetti, J.:

       Plaintiffs Jennifer Duncan and Karen Kenning, in her capacity as Trustee of the Jennifer

Duncan Supplemental Needs Trust, bring this action against: (i) the "Sullivan County

Defendants," comprising Sullivan County, Joseph Todora, William Moon, Colleen Cunningham,

Constantina Hart, Victoria Sawall, and Rachel Innella; (ii) current and former officials of New

York State's Office of Temporary and Disability Assistance ("OTDA")—Michael Allen, Marc

Isaacs, Samuel D. Roberts, Michael P. Hein, and Samuel L. Spitzberg (the "OTDA

Defendants"); (iii) New York State Department of Health Commissioner Howard Zucker (with

the OTDA Defendants, the "State Defendants"); and (iv) Independent Living, Inc., for claims

relating to the termination of Duncan's federally funded medical assistance benefits

("Medicaid").

       Now pending are four motions to dismiss plaintiffs' first amended complaint ("FAC")

pursuant to Rule 12(b)(6), filed by, respectively: (i) the State Defendants (Doc. #101); (ii)

Sullivan County, Todora, Moon, and Cunningham (Doc. #108); (iii) Independent Living (Doc. #112); and (iv) Hart, Innella, and Sawall (Doc. #118).

For the following reasons, the State Defendants' motion (Doc. #101) is GRANTED IN PART and DENIED IN PART; Sullivan County, Todora, Moon, and Cunningham's motion (Doc. #108) is GRANTED IN PART and DENIED IN PART; Independent Living's motion (Doc. #112) is GRANTED; and Hart, Innella, and Sawall's motion (Doc. #118) is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motions to dismiss, the Court accepts as true all well-pleaded allegations in the FAC and draws all reasonable inferences in plaintiffs' favor, as summarized below.

I.  <u>The Medicaid Program</u>

Medicaid, a joint federal-state program, provides federal funding for state programs that provide medical assistance, rehabilitation, and other services to individuals with limited income and resources. States choosing to participate in Medicaid must administer the program through a single state agency.

New York State's Department of Health ("DOH") is the state agency responsible for the administration of Medicaid in New York. DOH delegates day-to-day operations of certain aspects of Medicaid to local departments of social services, including Sullivan County's Department of Family Services ("DFS").

DOH has delegated to OTDA supervision of the State's social service programs and review of local social services departments' determinations regarding individuals' social services

program benefits.  Thus, an individual who wishes to challenge a local social services department's determination regarding his or her Medicaid coverage may do so by requesting a "fair hearing" before an OTDA Administrative Law Judge ("ALJ").

II.     Duncan's Consumer-Directed Personal Assistance Program Services

About twenty years ago, Duncan was allegedly diagnosed with several solvent- and toxicant-induced medical conditions, rendering her disabled and in need of significant at-home care and assistance.  According to Duncan, these conditions require her to avoid exposure to certain chemicals found in many household products, including common cleaning fluids, perfumes, colognes, and deodorants.  Accordingly, Duncan and visitors to her home must wear clothing laundered with non- or less-toxic solutions, such as borax.

From April 2009 to October 10, 2014, Duncan, a resident of Sullivan County, received consumer-directed personal assistance services through the Consumer Directed Personal Assistance Program ("CDPAP"), as administered by DFS.  CDPAP is available through a Medicaid Managed Long Term Care Health Plan, and allows states to provide eligible beneficiaries with an optional choice of self-directed personal assistance services to accommodate their medical needs.  Specifically, CDPAP allows individuals with an approved self-directed services plan and budget to purchase personal care assistance and related services, thus permitting eligible individuals to independently hire, supervise, and manage personal care assistants ("PCAs").

According to Duncan, she utilized CDPAP because it was the only program available to her through which she could control the dress, and use of personal products, of any PCAs providing assistance.  This was important to Duncan because of her medical conditions and sensitivity to various solvents and toxicants.

III.    <u>Fiscal Intermediary Independent Living</u>

By law, local districts, like Sullivan County, must pay CDPAP PCAs through third-party fiscal intermediaries, such as Independent Living. Independent Living contracts with Sullivan County to provide insurance and wage and benefit processing to PCAs employed by CDPAP-eligible beneficiaries. However, third-party fiscal intermediaries, like Independent Living, have no authority to manage, hire, or fire CDPAP PCAs.

In April 2009, Duncan entered into an agreement with Independent Living under which Independent Living agreed to act as the third-party fiscal intermediary for Duncan's PCAs. In other words, Independent Living agreed to be the fiscal intermediary between Duncan, who hired her PCAs, and DFS, which administered CDPAP. As a result, Independent Living agreed to provide insurance, and wage and benefit processing, to Duncan's PCAs.

IV.    <u>Termination of Duncan's CDPAP Services</u>

Federal regulations implementing the Medicaid program require DOH to redetermine the eligibility of Medicaid beneficiaries at least every twelve months. Thus, around June 2014, Duncan requested assistance from DFS to obtain and complete Medicaid recertification forms. However, Sawall, Innella, or one or more of the other Sullivan County Defendants allegedly refused to provide Duncan recertification assistance in retaliation for complaints Duncan made previously about other social services, or lack thereof. On August 1, 2014, Duncan's Medicaid coverage and benefits were terminated.

According to Duncan, in September 2014, one or more of the Sullivan County Defendants notified Independent Living that Duncan's Medicaid coverage had terminated as of August 1, 2014. Independent Living then notified Duncan that, effective October 10, 2014, it would discontinue providing fiscal intermediary services to Duncan's PCAs. Independent

Living also notified Duncan's PCAs that it would no longer provide fiscal intermediary services for any continued work for Duncan after October 10, 2014.

Upon learning that her Medicaid coverage had been terminated, Duncan requested a fair hearing before OTDA as to her Medicaid recertification and CDPAP eligibility.

According to Duncan, when a Medicaid recipient requests a fair hearing, she is entitled to receive her benefits unchanged until a decision is made following the hearing. Indeed, Duncan alleges that around October 8, 2014, OTDA ordered Duncan's CDPAP aid to continue. OTDA allegedly further ordered Duncan's Medicaid reinstated, retroactive to August 1, 2014, until a fair hearing decision was rendered. Duncan notified Independent Living of OTDA's orders and requested it rescind the notices it sent to her PCAs to inform them that they could continue to work for Duncan for pay. Duncan alleges Independent Living did not rescind the notices.

According to Duncan, a Medicaid recipient who requests a fair hearing may also request a local agency conference to resolve the matter short of a fair hearing determination. Thus, at some unspecified time, Duncan requested an agency conference with DFS, as provided for by regulation, to contest the discontinuance of her Medicaid coverage and CDPAP services. Duncan alleges Todora, Moon, and Hart refused Duncan's request for an agency conference.

According to Duncan, the OTDA ALJ who presided over a fair hearing session directed DFS to restore Duncan's CDPAP pending a final decision, and to provide Duncan with access to her complete Medicaid case file. Notwithstanding these directives, Duncan alleges the Sullivan County Defendants, and specifically Hart, refused to provide her case file.

Duncan further alleges Hart and other Sullivan County Defendants then conspired to initiate an involuntary guardianship proceeding against Duncan, seeking to deprive her of any opportunity "to enforce[e] her rights against them." (Doc. #100 ("FAC") ¶ 89). The

guardianship proceeding was dismissed in March 2017, after a judge directed DFS to provide Duncan "the help she needed." (Id. ¶ 91). However, DFS agreed to pay for fifteen weekly hours of CDPAP services only, and, at some unspecified later date, discontinued same.

After DFS discontinued "the minimal 15 hour program," Duncan sought another fair hearing, and OTDA again ordered aid to continue. (FAC ¶ 92). According to Duncan, DFS refused to comply with OTDA's directive. Duncan further alleges that OTDA Defendant Allen stated OTDA Defendants Isaacs and Roberts instructed other OTDA officials "to refrain from taking effective action to enforce the Aid Continuing directive." (Id. ¶ 95).

According to Duncan, OTDA had reissued aid-continuing directives in 2015, 2016, and 2017, but DFS and Independent Living have not complied with these directives. (FAC ¶ 78).

Duncan further alleges that on June 14, 2017, OTDA Defendant Spitzberg participated in a conference call concerning Duncan's case, but took no action to enforce OTDA's aid-continuing directive despite having knowledge of same.

According to Duncan, OTDA Defendant Isaacs scheduled multiple telephonic hearings regarding Duncan's request for a fair hearing, but proceeded with the hearings despite knowing Duncan could not participate at the scheduled times.

As an additional matter, Duncan further alleges that, at some unspecified time while she was receiving CDPAP PCA services, Sullivan County Defendant Innella refused to accommodate Duncan's disabilities because she refused to prepare her clothing in a manner consistent with Duncan's directives. According to Duncan, Innella requested payment for time spent laundering her clothing in accordance with Duncan's directives, and Sullivan County Defendant Moon, Innella's superior, told Innella she would not be paid for such time.

V.    Supplemental Needs Trust

In 2009, the Jennifer Duncan Supplemental Needs Trust ("SNT") was established by order of the Supreme Court, Kings County.  The SNT was funded with workers compensation payments due, and to become due, to Duncan, and continued to be funded by contributions from Duncan's "Medicaid spenddown requirements."  Duncan alleges her SNT was not intended to pay for services covered by Medicaid or other social services programs, but rather for housing and other needs.  (FAC ¶ 8).

After Duncan's Medicaid coverage and CDPAP benefits were terminated, Kenning, the Trustee of the Duncan's SNT, utilized SNT funds to pay qualified aides for home health services.  According to Duncan, the SNT is now exhausted, and she is without funds to continue to pay for requisite home health services.

**DISCUSSION**

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

[1]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II.   Karen Kenning

Defendants argue any claims asserted by Karen Kenning, as Trustee of the Jennifer Duncan Supplemental Needs Trust, should be dismissed because Kenning has no plausible cause of action.

The Court agrees.

"In order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997). Because Section 1983 does not create any independent federal right, courts consider three factors to determine whether a particular statutory provision gives rise to actionable Section 1983 claim. Id.

"First, Congress must have intended that the provision in question benefit the plaintiff." Blessing v. Freestone, 520 U.S. at 340. "Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence." Id. at 340–41. "Third, the statute must unambiguously impose a binding obligation on the States." Id. at 341.

Here, although the Medicaid statutes afford privately enforceable fair hearing rights to beneficiaries or enrollees, see 42 U.S.C. § 1396a(3) and Shaknes v. Eggleston, 740 F. Supp. 2d 602, 616 (S.D.N.Y. 2010), aff'd in part, vacated in part sub nom, Shaknes v. Berlin, 689 F.3d 244 (2d Cir. 2012), the statutes do not confer any rights upon Kenning, as Trustee of Duncan's SNT. See 42 U.S.C. § 1396p(d)(4)(A). Plaintiffs acknowledge as much, arguing Kenning "is only a nominal party seeking to preserve and enforce rights of the trust beneficiary who most definitely has standing." (Doc. #135 ("Pls. Opp.") at 9).

Accordingly, Kenning's capacity as Trustee of Duncan's SNT does not bestow upon Kenning a plausible cause of action against any defendant. Simply, the statutory and regulatory provisions referenced in the FAC do not afford a Trustee of a beneficiary's SNT privately enforceable rights. To the extent the FAC contains causes of action asserted by Kenning, such claims must be dismissed.

III.    Capacity to Maintain Suit

Defendants argue Duncan lacks capacity to maintain the instant action and, as a result, the case should either be dismissed without prejudice or stayed pending a competency determination.

The Court disagrees.

A litigant's capacity to sue or be sued in her individual capacity is determined "by the law of the individual's domicile." Fed. R. Civ. P. 17(b)(1). Under New York law, "[a] person shall appear by [her] guardian ad litem . . . if [s]he is an adult incapable of adequately prosecuting or defending [her] rights." N.Y. C.P.L.R. § 1201.

At this time, there is no reasonable indication that Duncan lacks capacity to maintain this action. Although the FAC states Duncan "has been, and is, unable to participate fully or even

reasonably or adequately in this or other litigation or administrative proceedings," (FAC ¶ 135), this allegation is belied by Duncan's commencement of the instant action and participation in this litigation. Moreover, it does not appear that Duncan's prior involuntary guardianship proceedings resulted in the appointment of a guardian to manage her affairs.

Accordingly, the Court declines to interpret Duncan's above-quoted allegation as a judicial admission that she lacks capacity to prosecute this case. If circumstances change, defendants can renew their application at that time.

## IV. Statute of Limitations

Defendants contend all of Duncan's claims are untimely because the statute of limitations for Section 1983 claims is three years. Specifically, they argue Duncan's claims, if any, accrued no later than October 2014, when Duncan became aware that her CDPAP services were discontinued and at which time she did not receive aid-continuing benefits. This action was commenced on October 10, 2018, more than three years later.

The Court agrees with respect to Duncan's claims respecting the 2014 termination of her Medicaid and CDPAP services and also her involuntary guardianship proceeding, but disagrees with respect to Duncan's other claims.

"Although courts look to state law for the length of the limitations period, the time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles." McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019). "That time is presumptively when the plaintiff has a complete and present cause of action." Id. "In the context of Medicaid procedures, the date of accrual is the time when a final determination is issued, or if no determination is issued, the time at which the litigant could have assumed that he or she had received a final determination." Trs. of Masonic Hall & Asylum Fund v. Leavitt,

2006 WL 1686405, at *12 (N.D.N.Y. June 7, 2006) (citing <u>Hollander v. Brezenoff</u>, 787 F.2d 834, 839 (2d Cir. 1986)).

"The continuing violation doctrine, where applicable, provides an exception to the normal knew-or-should-have-known accrual date." <u>Gonzalez v. Hasty</u>, 802 F.3d 212, 220 (2d Cir. 2015). "[W]here the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'" <u>Id.</u> (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 117 (2002)). "It applies to claims composed of a series of separate acts that collectively constitute one unlawful [] practice." <u>Id.</u> (alteration in original). It thus "applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." <u>Id.</u> (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. at 114–15) (alteration in original).

In addition, because "the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." <u>Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.</u>, 14 F. Supp. 3d 191, 209 (S.D.N.Y. 2014).

Here, Duncan's contention that the continuing violation doctrine applies is unpersuasive. First, the allegations in the FAC respect discrete acts, rather than "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." <u>See</u> <u>Gonzalez v. Hasty</u>, 802 F.3d at 220. Indeed, the allegedly unlawful termination of Duncan's Medicaid benefits, and defendants' repeated and allegedly unlawful failure to either comply with or enforce OTDA's annual aid-continuing directives, are separate and discrete acts that, if true,

each give rise to a Section 1983 claim.  So too do defendants' alleged failures to provide Duncan an adequate fair hearing or agency conference.

Accordingly, Duncan's claims concerning allegations of conduct that pre-dates October 10, 2015—three years prior to the commencement of this case—must be dismissed.  These include Duncan's claims (i) against the Sullivan County Defendants, for failure to assist Duncan with her Medicaid re-certification in June 2014; (ii) against any of the defendants, for termination of Duncan's Medicaid and CDPAP services in October 2014; (iii) defendants' alleged failures to comply with OTDA's 2014 aid-to-continue directive; and (iv) claims relating to the commencement of involuntary guardianship proceedings.  Accordingly, Duncan's third cause of action against Sullivan County, Innella, Moon, and Independent Living, for failure to provide adequate notice of her Medicaid benefits termination, is subject to dismissal.  And subject to partial dismissal are Duncan's first, second, fifth, and sixth causes of action, inasmuch as they hinge on any time-barred conduct.

However, Duncan alleges that her requests for an OTDA fair hearing and a DFS agency conference have been ignored.  It is not entirely clear when Duncan could have assumed that such requests were denied by OTDA or DFS, and thus it is not apparent on the face of the FAC when these claims accrued.  Accordingly, at this stage of the proceedings, Duncan plausibly alleges claims respecting defendants' refusal to afford Duncan a fair hearing and agency conference, which are not time-barred.

Duncan also alleges that in 2016, and 2017, OTDA reissued directives for her CDPAP services to continue pending a final determination of her fair hearing request.  According to Duncan, defendants have not complied with, or enforced, these directives.  Such claims respect

discrete conduct by defendants within the applicable three-year statute of limitations. Accordingly, Duncan's claims respecting these allegations are timely.

V.      Pending State Court Proceeding

Defendants argue the instant case should be dismissed or stayed, because on January 16, 2016, Duncan commenced a state-court lawsuit against Sullivan County and DFS, alleging similar and overlapping facts and claims as those alleged herein.

The Court disagrees.

In an exercise of its discretion, a federal court may stay proceedings "in the action before it pending a decision by the state court, with a view to avoiding wasteful duplication of judicial resources and having the benefit of the state court's views." Giulini v. Blessing, 654 F.2d 189, 193 (2d Cir. 1981). In this district, seven factors control a court's determination whether to order a stay or dismiss an action on the parallel-state-proceeding theory:

> (1) identity of parties and issues in both actions; (2) considerations of comity;
> (3) promotion of judicial efficiency; (4) adequacy and extent of relief available in
> the alternative forum; (5) likelihood of prompt disposition in the alternative forum;
> (6) convenience of parties, counsel, and witnesses; and (7) possibility of prejudice
> to a party as a result of the stay.

Alameda Room, Inc. v. Pitta, 538 F. Supp. 1072, 1077 (S.D.N.Y. 1982).

On balance, the Court is not persuaded dismissal or a stay is warranted. According to Duncan, she has not pursued her state-court case and, therefore, promotion of judicial efficiency and the likelihood of prompt disposition in the alternative forum weigh against dismissal or a stay. In addition, the majority of the named defendants in the instant case do not appear to be party defendants in Duncan's state-court filing. Furthermore, Duncan may be prejudiced by a stay of proceedings given her alleged medical condition and alleged need for reinstatement of Medicaid benefits. Finally, although some of the instant claims respect conduct preceding

Duncan's January 2016 state-court filing, other claims respect conduct that occurred after January 2016, including defendants' alleged failure to comply with OTDA's 2017 directive for aid to continue.

Accordingly, the Court declines to dismiss or stay the instant case based on Duncan's prior state-court filing.

VI.    Exhaustion and Primary Jurisdiction

Sullivan County, Todora, Moon, and Cunningham argue the Court should dismiss the FAC based on Duncan's failure to exhaust administrative remedies.

The Court disagrees.

Generally, a party "who objects to the act of an administrative agency must exhaust available administrative remedies before being permitted to litigate in a court of law." Coleman v. Daines, 79 A.D.3d 554 (1st Dep't 2010). However, this rule is not inflexible. For example, it need not be followed "when an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, or when resort to an administrative remedy would be futile or when its pursuit when cause irreparable injury." Id. Moreover, exhaustion is not required "where only an issue of law is involved . . . or where the issue involved is purely the construction of the relevant statutory and regulatory framework." Id.

Here, Duncan alleges she was entitled, as a matter of law, to aid-continuing benefits upon her request for a fair hearing following the termination of her Medicaid benefits and CDPAP services. She further alleges defendants have ignored OTDA's directives, pursuant to statutory requirements, for her aid to continue pending resolution of her fair hearing request or agency conference. Yet, in defendants' view, Duncan must first (i) wait an indeterminate amount of time for a state agency to render a final decision regarding her fair hearing request, and then (ii)

seek redress through an Article 78 proceeding, before bringing constitutional claims in this Court.

Defendants' perception distorts the above exhaustion principle. Duncan's claims respect an issue of law—principally defendants' alleged failure to continue her Medicaid and CDPAP services pending resolution of her fair hearing and agency conference requests. Duncan alleges such conduct is unconstitutional, and that resort to an administrative remedy would be futile at this juncture or cause irreparable injury. Accordingly, at this stage, the Court declines to dismiss Duncan's claims on exhaustion grounds.

Defendants next argue the FAC should be dismissed pursuant to the doctrine of primary jurisdiction.

Again, the Court disagrees.

"The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." U.S. ex rel. Krol v. Arch Ins. Co., 46 F. Supp. 3d 347, 354 n.4 (S.D.N.Y. 2014). "The doctrine's central aim is to allocate initial decisionmaking responsibility between courts and agencies." Ellis v. Tribune Television Co., 443 F.3d 71, 81 (2d Cir. 2006). "Recourse to the doctrine of primary jurisdiction is thus appropriate 'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" Id. (citing United States v. W. Pac. R.R., 352 U.S. 59, 64 (1956)). However, the doctrine is not usually applied "when the issue at stake is legal in nature and lies within the traditional realm of judicial competence." Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 851 (2d Cir. 1988).

Defendants offer no persuasive reason to dismiss this action pursuant to the primary jurisdiction doctrine. This is because Duncan's claims do not require resolution of issues within the special competence of an administrative body. According to Duncan, her fair hearing and agency conference requests have been pending for some time, the stalled resolution of which has violated her constitutional right to due process. Moreover, in the Court's view, the issue of whether defendants' alleged failures to provide aid-continuing services to Duncan pending resolution of her challenge to Medicaid termination does not extend beyond the conventional experiences of this Court, nor does it fall within the realm of specialized administrative discretion.

Accordingly, the Court declines to dismiss this case pursuant to the doctrine of primary jurisdiction.

VII.    Due Process

Defendants argue Duncan fails to plausibly allege a procedural due process claim.

The Court disagrees.

In order to state a valid claim for deprivation of procedural due process under Section 1983 a plaintiff must demonstrate that she "possessed a protected liberty or property interest, and that [s]he was deprived of that interest without due process.'" McMenemy v. City of Rochester, 241 F.3d 279, 285–86 (2d Cir. 2001). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Richardson v. Kelaher, 1998 WL 812042, at *4 (S.D.N.Y. Nov. 19, 1998) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)).

It is settled that Medicaid benefits "are a protectable property interest under the Fourteenth Amendment." Mayer v. Wing, 922 F. Supp. 902, 910 (S.D.N.Y. 1996) (citing

Goldberg v. Kelly, 397 U.S. 254, 264 (1970)).  Federal regulations require that the state's

hearing system 'meet the due process standards set forth in Goldberg v. Kelly."  See 42 C.F.R.

§ 431.205(d).  In Goldberg, the Supreme Court determined that due process requires "an

adequate hearing" before benefits are terminated.  Goldberg v. Kelly, 397 U.S. at 261.  This

includes "the right to a decision."  Shaknes v. Berlin, 689 F.3d at 256.

     "Under federal law, when a person's claim for Medicaid assistance is denied or not acted

upon with reasonable promptness, the state must 'provide . . . an opportunity for a fair hearing

before the State agency."  Fishman v. Daines, 743 F. Supp. 2d 127, 133 (E.D.N.Y. 2010)

(quoting 42 U.S.C. § 1396(a)(3)).  Indeed, "[a] person whose Medicaid benefits are terminated is

entitled to constitutional due process, such as notice and a hearing, if timely requested."  Graus v.

Kaladjian, 2 F. Supp. 2d 540, 544 (S.D.N.Y. 1998).

     Here, defendants argue Duncan cannot state a plausible due process claim because she

can obtain due process by continuing to pursue a fair hearing administrative remedy and,

thereafter, an Article 78 proceeding, if necessary.  Again, defendants' arguments miss the mark.

The problem with defendants' contention is that, according to Duncan, she has requested fair

hearings and an agency conference, to no avail.  And "where a plaintiff bring[s] claims based on

the inadequacy of current state procedures, 'the availability of post-deprivation procedures will

not, ipso facto, satisfy due process.'"  Fishman v. Daines, 743 F. Supp. 2d at 146 (quoting

Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir.

1996)).  Although Article 78 would provide Duncan a post-deprivation remedy, the Court cannot

conclude at this stage that such remedy would be constitutionally adequate, since final

determinations respecting Duncan's fair hearing and agency conference requests have not yet

issued.

Accordingly, at the motion to dismiss stage, Duncan has sufficiently alleged inadequacies respecting the procedures defendants suggest are available to her, as well as violations of due process, and the Court thus declines to dismiss the procedural due process claim.

## VIII. Personal Involvement

The Sullivan County Defendants and State Defendants argue the FAC must be dismissed because Duncan fails to allege their personal involvement in any conduct violative of Duncan's constitutional rights.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994). "The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" Leneau v. Ponte, 2018 WL 566456, at *14 (S.D.N.Y. Jan. 25, 2018) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)).

> Supervisor liability under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).[2]

---

[2] Since Ashcroft v. Iqbal, district courts within the Second Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases), on reconsideration in part, 2016 WL 5900217 (S.D.N.Y. July 29, 2016). The Second Circuit has yet to resolve this dispute. Id.

"However, complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." Id. (citing Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order)); see also Fleming v. City of New York, 2019 WL 4392522, at *15 (S.D.N.Y. Aug. 27, 2019) (noting allegations concerning a Section 1983 claim "are not sufficient to allege personal involvement [when] they fail to differentiate as to which defendant was involved in the alleged unlawful conduct.").

A.      Sullivan County Defendants

    1.      Sullivan County Defendants Generally

To the extent Duncan attributes allegedly unlawful conduct to the "Sullivan County Defendants" generally, such allegations fail to allege the personal involvement of any named defendant and therefore are insufficient to state a claim. See Atuahene v. City of Hartford, 10 F. App'x at 34.

    2.      Sawall and Innella

With respect to Sawall personally, Duncan alleges that in 2014, Sawall "determined not to provide requested assistance . . . in re-certifying [Duncan's] Medicaid coverage," knowing the failure to do so would result in Duncan "losing, temporarily or permanently, the benefits of the federal program." (FAC ¶ 68). And with respect to Innella personally, Duncan alleges that: (i) in 2014, Innella "determined not to provide requested assistance . . . in re-certifying [Duncan's] Medicaid coverage," knowing the failure to do so would result in Duncan "losing, temporarily or permanently, the benefits of the federal program" (FAC ¶ 68); (ii) at some time during Duncan's receipt of CDPAP services, Innella refused to accommodate Duncan's medical needs by preparing her clothing in conformity with Duncan's specifications; (iii) in June 2015, Innella

helped initiate guardianship proceedings against Duncan; and (iv) Innella failed to provide Duncan adequate notice of her Medicaid termination or reduction in care.

The above allegations respect conduct outside the applicable three-year statute of limitations for Section 1983 claims. Accordingly, Duncan's claims must be dismissed inasmuch as they are asserted against Sawall or Innella.

### 3. Cunningham

The FAC contains no specific allegations concerning Cunningham. Accordingly, Duncan fails to allege Cunningham's personal involvement, and thus Duncan's claims must be dismissed inasmuch as they are asserted against this defendant.

### 4. Hart

With respect to Hart personally, Duncan alleges that: (i) Hart has failed to enforce OTDA's directive for aid to continue or afford Duncan an agency conference; (ii) Hart has refused to provide Duncan her case file in connection with Duncan's request for a fair hearing; and (iii) in June 2015, Hart unlawfully initiated guardianship proceedings against Duncan.

Duncan pleads sufficiently Hart's personal involvement in her alleged refusal to enforce OTDA's aid-continuing directives and accommodate Duncan's request for an agency conference, as well as Hart's refusal to provide Duncan her case file. Moreover, these allegations concern conduct beyond merely providing counsel to a municipal entity. Accordingly, Duncan's claims respecting these allegations shall proceed.

However, Duncan's claims respecting the initiation of guardianship proceedings are time-barred as outside the applicable statute of limitations. Accordingly, Duncan's claims must be dismissed inasmuch as they concern same.

5.    Moon

With respect to Moon personally, Duncan alleges that:  (i) he has failed to afford Duncan an agency conference following termination of her Medicaid benefits; and (ii) when Duncan was receiving CDPAP services, Moon refused to authorize payment to Innella for time spent to launder clothes to accommodate Duncan's care directives.

Duncan pleads sufficiently Moon's personal involvement in his alleged refusal to accommodate Duncan's request for an agency conference.  Accordingly, Duncan's claims respecting this allegation shall proceed.

However, Moon's alleged refusal to authorize certain payments while Duncan was receiving CDPAP services concerns conduct outside the applicable statute of limitations. Therefore, Duncan's claims must be dismissed inasmuch as they respect this allegation.

6.    Todora

With respect to Todora personally, Duncan alleges he:  (i) refused to afford Duncan an agency conference following termination of her Medicaid benefits; (ii) failed to provide Duncan adequate notice of her Medicaid termination or reduction in care; and (iii) failed to accommodate Duncan's medical needs by denying Duncan certain assistance while she was receiving CDPAP services.

Duncan pleads sufficiently Todora's personal involvement in his alleged refusal to accommodate Duncan's request for an agency conference.  Accordingly, Duncan's claims respecting this allegation shall proceed.

However, Todora's alleged failures to provide Duncan notice of her Medicaid termination and accommodations while Duncan was receiving CDPAP service concern conduct

outside the applicable limitations period.  Accordingly, Duncan's claims must be dismissed inasmuch as they respect these allegations.

B.      State Defendants

1.      State Defendants Generally

To the extent Duncan attributes allegedly unlawful conduct to the "State Defendants" generally, such allegations fail to allege the personal involvement of any named defendant and therefore are insufficient to state a claim.  See Atuahene v. City of Hartford, 10 F. App'x at 34.

2.      Hein and Zucker

The FAC contains no specific allegations concerning Hein, the acting Commissioner of OTDA, or Zucker, the Commissioner of DOH, save for the fact that they have supervisory responsibilities within their respective agencies.  Indeed, Duncan does not plausibly allege either of these defendants personally failed to enforce OTDA's aid-continuing directives or fair hearing obligations.  Accordingly, Duncan's claims against Hein and Zucker must be dismissed.

3.      Roberts and Isaacs

With respect to Roberts and Isaacs personally, Duncan alleges they "instructed other individuals at OTDA to refrain from taking effective action" to enforce OTDA's aid-continuing directives.  (FAC ¶ 95).  Taken as true, this allegation establishes these defendants' personal involvement in failing to enforce OTDA's aid-continuing directives.

Accordingly, Duncan's claims against Roberts and Isaacs shall proceed inasmuch as they concern these defendants' alleged failures to enforce OTDA's aid-continuing directives.

Duncan also alleges Isaacs scheduled multiple fair hearings and allowed the scheduled hearings to proceed without Duncan's participation in same, even though Isaacs knew Duncan

could not participate in the hearings as scheduled. Accordingly, Duncan's claims respecting her requests for a fair hearing shall proceed against Isaacs.

        4.     <u>Spitzberg and Allen</u>

With respect to Spitzberg personally, Duncan alleges that on June 14, 2017, Spitzberg participated in a conference call regarding Duncan's case, and thereafter failed to enforce OTDA's aid-continuing directives. And with respect to Allen personally, Duncan alleges he acknowledged Duncan's entitlement to aid-continuing benefits, but failed to take measures to enforce same.

Accordingly, Duncan's claims against Spitzberg and Allen shall proceed inasmuch as they respect these defendants' alleged failures to enforce OTDA's aid-continuing directives.

IX.    <u>Official Capacity</u>

The State Defendants argue Duncan's Section 1983 claims should be dismissed to the extent they are asserted against the State Defendants in their official capacities.

The Court agrees.

"New York has not waived its immunity and consented to suit in federal court under . . . [Section] 1983, and Congress's enactment of . . . [Section] 1983 did not override the immunity that the state and their agencies enjoy under the Eleventh Amendment." <u>Cajuste v. Lechworth Dev. Disabilities Serv.</u>, 2005 WL 22863, at *3 (S.D.N.Y. Jan. 5, 2005) (citing <u>Trotman v. Palisades Interstate Park Comm'n</u>, 557 F.2d 35, 38–40 (2d Cir. 1977)).

Thus, Duncan's claims are dismissed inasmuch as they are asserted against the State Defendants in their official capacities.

X.    Independent Living

A.    State Action

Independent Living argues it is not a state actor and therefore Duncan's Section 1983 claims must be dismissed inasmuch as they are asserted against Independent Living.

The Court agrees.

To show that the actions of a private entity are attributable to the state, those actions must meet one of three tests laid out by the Supreme Court: (1) the "compulsion" test, where an entity acts pursuant to the coercive power of the state; (2) the "public function" test, where the state has delegated a public function to the entity; or (3) the "joint action" or "close nexus" test, where the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies. Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257–58 (2d Cir. 2008).

In analyzing whether a private party acts under color of state law for purposes of Section 1983, the Court analyzes the specific conduct of which a plaintiff complains, rather than the general characteristics of the party. See Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012). The public function delegated to the private party must be one that is the exclusive or near exclusive function of the state. Horvath v. Westport Library Ass'n, 362 F.3d 147, 151–52 (2d Cir. 2004).

Here, Duncan's Section 1983 claims against Independent Living fail for lack of state action. As alleged in the FAC, Independent Living is a fiscal intermediary, which, unlike a traditional, certified home health care agency, lacks authority to determine or assess a Medicaid beneficiary's medical necessities. See, e.g. Catanzano by Catanzano v. Dowling, 60 F.3d 113, 117–120 (2d Cir. 1995).

24

Indeed, as limited by New York Social Services Law, Independent Living merely provided insurance, and wage and benefit processing, to PCAs employed by Duncan. See N.Y. Soc. Serv. Law § 365-f(4-a)(a)(iii). Duncan does not plausibly allege, nor can she, that Independent Living terminated Duncan's Medicaid benefits or CDPAP services, or prevented the reinstatement of such benefits or services. As noted herein, applicable law prevents fiscal intermediaries from engaging in, inter alia, "managing the [consumer's] plan of care . . . ; training, supervising and scheduling each consumer directed personal assistant; [or] terminating the consumer directed personal assistant's employment." Id. Accordingly, Independent Living's services, as a fiscal intermediary only, does not meet any of the aforementioned tests to satisfy state action.

Moreover, according to the FAC, the services Independent Living afforded to Duncan did not comprise conduct in derogation of Duncan's constitutional rights. In other words, Independent Living was never in a position, like that of a traditional, certified home health care agency, to violate Duncan's rights. It simply lacked authority to make the decisions that Duncan alleges violated her constitutional right to due process.

For this reason, Duncan's Section 1983 claims asserted against Independent Living must be dismissed.

B.      Breach of Contract

Independent Living further argues Duncan fails to plausibly allege a breach of contract claim, to the extent one is pleaded.

The Court agrees.

To establish a breach of contract under New York law, a party must demonstrate: (i) the existence of an agreement; (ii) performance by the moving party; (iii) breach of contract by the

opposing party; and (iv) damages.  <u>Diesel Props S.r.l. v. Greystone Bus. Credit II LLC</u>, 631 F.3d 42, 52 (2d Cir. 2011).

Here, Duncan alleges Independent Living breached its contract with Duncan by informing her PCAs that, following the termination of her Medicaid and CDPAP services, they would no longer be paid for work performed for Duncan.  Duncan further alleges Independent Living breached the contract by refusing to perform its obligations as a fiscal intermediary between Duncan and DFS.  The contractual language on which Duncan relies states in pertinent part:

> Except as otherwise permitted by law, Jennifer Duncan will be notified of any meeting or contact between [Independent Living] and any third party which relates to her health or care, and [Independent Living] will obtain Jennifer Duncan's written permission for [Independent Living]'s participation in advance.

(FAC ¶ 66).

Fatally, Duncan does not plausibly allege Independent Living's communications to her PCAs were unlawful.  As noted herein, Independent Living provided fiscal intermediary services to PCAs hired by Duncan via her CDPAP services.  When Independent Living was notified that Duncan's Medicaid coverage was terminated, it merely, allegedly, communicated same to Duncan's PCAs.  Duncan does not allege Independent Living made any decision respecting the hiring and firing of Duncan's PCAs, or the management or eligibility of Duncan's Medicaid coverage and CDPAP services.  For these reasons, Duncan's breach of contract claim, to the extent one is pleaded, must be dismissed.

XI.    <u>Monell Claim</u>

Sullivan County argues that Duncan fails plausibly to state a claim under <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978), and, as a result, her claims against the County should be dismissed.

The Court disagrees.

"It is axiomatic that municipalities cannot be held liable pursuant to § 1983 on a respondeat superior theory." Betts v. Shearman, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (citing Monell v. Dep't of Soc. Servs, 436 U.S. at 690). Instead, "[t]o hold a [municipality] liable under 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

To allege such a policy or custom, a plaintiff may assert one of the following:

(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

Guzman v. United States, 2013 WL 5018553, at *3 (S.D.N.Y. Sept. 13, 2013) (quoting Saenz v. Lucas, 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008)).

"While Monell claims are not subject to a 'heightened' pleading standard beyond that defined in Rule 8(a)(2), such claims nevertheless must meet the plausibility requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009)." Guzman v. United States, 2013 WL 5018553, at *4 (quoting Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). In other words, "boilerplate" allegations will not suffice. Id. at *3.

"[A]llegations [that a defendant] acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. County of Monroe, 351 F.

App'x 543, 545–46 (2d Cir. 2009) (summary order) (citing Dwares v. City of New York, 985 F.2d 94, 100–02 (2d Cir. 1993)). It is also not enough for a plaintiff to allege that "a particular [employee] may be unsatisfactorily trained or that an otherwise sound program has occasionally been negligently administered." Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 440 (2d Cir. 2009).

Here, Duncan alleges Todora, the County's Commissioner of Health and Family Services, refused to accommodate Duncan's request for an agency conference. In other words, Duncan alleges an official with final decision-making authority partook in conduct that violated her right to due process respecting her Medicaid termination. See Guzman v. United States, 2013 WL 5018553, at *3.

Accordingly, at this stage in the proceedings, Duncan's Monell claim shall proceed.

XII.     Conspiracy

The FAC contains several allegations that the defendants conspired to terminate Duncan's Medicaid and CDPAP services, and continue to do so. Defendants argue Duncan fails to state a conspiracy claim.

The Court agrees.

To survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an over act done in furtherance of that goal causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). Vague or conclusory allegations of a conspiracy to deprive an individual of some constitutional right do not provide the proper basis for a Section 1983 claim. Id. at 325.

Here, Duncan does not allege, except in the most conclusory fashion, that defendants entered into an agreement to deny her a constitutional right. Accordingly, the claim fails.

XIII.   <u>Americans With Disabilities Act</u>

The State Defendants argue Duncan fails to plead a plausible ADA claim to the extent one is asserted.

The Court disagrees.

To state a claim under the ADA, a plaintiff must establish "(1) that she is a qualified individual with a disability; (2) that she was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to her disability." <u>Davis v Shah</u>, 821 F.3d 231, 259 (2d Cir. 2016). Importantly, a plaintiff must allege her mistreatment "was motivated by either discriminatory animus or ill will due to disability." <u>Elbert v. N.Y.S. Dep't of Corr. Servs.</u>, 751 F. Supp. 2d 590, 594–95 (S.D.N.Y. 2010).

Here, Duncan alleges her requests for a fair hearing and agency conference, as well as requests for accommodations to meaningfully participate in a hearing and conference, have been ignored. Indeed, she alleges the defendants have "taken the position that they are not required to accommodate [her] disability because it is an 'unusual' disability." (FAC ¶ 104). These allegations, although thin, are nevertheless sufficient at this stage of the proceedings to allege plausibly an ADA claim. Accordingly, the claim shall proceed against the remaining defendants.

XIV.   <u>Qualified Immunity</u>

Lastly, the Sullivan County Defendants and State Defendants argue they are entitled to qualified immunity, and thus any claims asserted against them must be dismissed.

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Defendants bear the burden of establishing qualified immunity." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).

Duncan plausibly states claims for relief, including violations of her clearly established constitutional right to due process respecting her Medicaid-related requests for a fair hearing and agency conference. Duncan also plausibly states a claim respecting certain State Defendants' refusal to enforce OTDA's aid-continuing directives. Taking Duncan's allegations as true, as it must, the Court cannot conclude at this time that defendants' conduct was objectively reasonable under the circumstances.

Accordingly, none of the defendants is entitled to qualified immunity at this time.

XV.    Leave to Amend

In an affidavit in support of Duncan's opposition to defendants' motions, her counsel requests leave "to supplement the pleading with a further amendment" if the Court "considers there should be more detail" recited in the FAC. (Doc. #133 ¶ 12).

The Court reluctantly grants Duncan a further, limited opportunity to amend.

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss. F5 Capital v. Pappas, 856 F.3d 61, 89 (2d. Cir. 2017).

Here, Duncan asks for leave to again amend her already amended complaint. Reading the FAC liberally, the Court concludes Duncan cannot plausibly allege a timely claim respecting the 2014 termination of her Medicaid benefits and CDPAP services, or a timely claim respecting her prior guardianship proceeding, or any plausible claim against Independent Living, Hein, or Zucker. However, Duncan may be able to plead additional facts giving rise to a plausible claim against individual Sullivan County Defendants, concerning the alleged failures to enforce OTDA's aid-continuing directives which issued within the statute of limitations period.

Accordingly, Duncan's application for leave to file a second amended complaint is granted, but only to the limited extent of pleading additional facts based on individual Sullivan County Defendants' alleged failures to implement OTDA's aid-continuing directives issued and/or ignored within the statute of limitations period.

## CONCLUSION

Independent Living's motion to dismiss (Doc. #112) is GRANTED.

The State Defendants' motion to dismiss (Doc. #101) is GRANTED IN PART and DENIED IN PART. Duncan's claims are dismissed inasmuch as they are pleaded against defendants Hein and Zucker. Duncan's claims against Roberts, Isaacs, Spitzberg, and Allen shall proceed inasmuch as they concern these defendants' alleged failure to enforce OTDA's aid-

continuing directives.  Duncan's claims against Isaacs shall also proceed inasmuch as they concern Isaacs's alleged refusal to provide Duncan a fair hearing.

Sullivan County, Todora, Moon, and Cunningham's motion to dismiss (Doc. #108) is GRANTED IN PART and DENIED IN PART.  Duncan's claims are dismissed inasmuch as they are pleaded against Cunningham.  Duncan's claims against Todora and Moon shall proceed inasmuch as they concern these defendants' alleged failure provide Duncan an agency conference.

Hart, Innella, and Sawall's motion to dismiss (Doc. #118) is GRANTED IN PART and DENIED IN PART.  Duncan's claims are dismissed inasmuch as they are pleaded against Sawall and Innella.  Duncan's claims against Hart shall proceed inasmuch as they concern Hart's alleged refusal to (i) enforce OTDA's aid-continuing directives, (ii) accommodate Duncan's request for an agency conference, and (iii) provide Duncan her case file.

Duncan's third cause of action, styled "Third Claim" and asserted against Sullivan County, Innella, Moon, and Independent Living, is dismissed as time-barred.

The Clerk is instructed to terminate Karen Kenning as a plaintiff in this case.

The Clerk is further instructed to terminate Independent Living, Inc., Howard Zucker, and Michael P. Hein as defendants in this case.

Duncan is granted leave to file a second amended complaint for the limited purpose of pleading additional facts against individual Sullivan County Defendants relating to OTDA's aid-continuing directives.  Duncan shall file her second amended complaint by March 16, 2020. Defendants' responses thereto are due March 30, 2020.

The Clerk is instructed to terminate the motions.  (Docs. ##101, 108, 112, 118).

Dated:  March 2, 2020
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge